NICOLA T. HANNA
United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN M. ARKOW (Cal. Bar No. 143755)
Assistant United States Attorney
Major Frauds Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-6975
Facsimile: (213) 894-6269
E-mail: steven.arkow@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 12-467(A)-JAK |
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT AVIV MIZRAHI |
| v. | |
| AVIV MIZRAHI, aka "Aviv Shoham Schwartz" | |
| Defendant. | |

1.   This constitutes the plea agreement between defendant AVIV MIZRAHI, also known as "AVIV SHOHAM SCHWARTZ" ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case.  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

1

1       a.    At the earliest opportunity requested by the USAO and
2   provided by the Court, appear and plead guilty to count two of the
3   First Superseding Indictment in <u>United States v. Avi Mizrahi</u>, CR No.
4   12-467(A)-JAK, which charges defendant with bank fraud, in violation
5   of 18 U.S.C. § 1344(2).

6       b.    Not contest facts agreed to in this agreement.

7       c.    At the time of sentencing, request that this Court
8   impose a sentence of 48 months of imprisonment.

9       d.    Abide by all agreements regarding sentencing contained
10  in this agreement.

11      e.    Appear for all court appearances, surrender as ordered
12  for service of sentence, obey all conditions of any bond, and obey
13  any other ongoing court order in this matter.

14      f.    Not commit any crime; however, offenses that would be
15  excluded for sentencing purposes under United States Sentencing
16  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
17  within the scope of this agreement.

18      g.    Be truthful at all times with the United States
19  Probation and Pretrial Services Office and the Court.

20      h.    Pay the applicable special assessment at or before the
21  time of sentencing unless defendant has demonstrated a lack of
22  ability to pay such assessment.

23      i.    Authorize the USAO to obtain a credit report
24  immediately upon defendant's entry of a guilty plea.

25      j.    Consent to the USAO inspecting and copying all of
26  defendant's financial documents and financial information held by the
27  United States Probation and Pretrial Services Office.

28

k. Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov or mail to the USAO Financial Litigation Section at 300 N. Los Angeles Street, Suite 7516, Los Angeles, CA 90012.

l. Agree that all court appearances, including his change of plea hearing and sentencing hearing, may proceed by video-teleconference ("VTC") or telephone, if VTC is not reasonably available, so long as such appearances are authorized by General Order 20-043 or another order, rule, or statute. Defendant understands that, under the Constitution, the United States Code, the Federal Rules of Criminal Procedure (including Rules 11, 32, and 43), he may have the right to be physically present at these hearings. Defendant understands that right and, after consulting with counsel, voluntarily agrees to waive it and to proceed remotely. Defense counsel also joins in this consent, agreement, and waiver. Specifically, this agreement includes, but is not limited to, the following:

i. Defendant consents under Section 15002(b) of the CARES Act to proceed with his change of plea hearing by VTC or telephone, if VTC is not reasonably available.

ii. Defendant consents under Section 15002(b) of the CARES Act to proceed with his sentencing hearing by VTC or telephone, if VTC is not reasonably available.

iii. Defendant consents under 18 U.S.C. § 3148 and Section 15002(b) of the CARES Act to proceed with any hearing

regarding alleged violations of the conditions of pre-trial release by VTC or telephone, if VTC is not reasonably available.

  m. Not commit any crime or any act constituting obstruction of justice; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

  n. Defendant understands that the government obtained additional material in this investigation that defendant has not been shown.  In exchange for the government's obligations under this agreement, defendant gives up any right he may have had to review the additional material, regardless of whether it is arguably exculpatory or inculpatory, and further agrees to waive any argument that the withholding of this material caused defendant's plea to be not knowing or involuntary.  The government agrees not to use at sentencing any of the withheld material without providing it to defendant.

THE USAO'S OBLIGATIONS

  3. The USAO agrees to:

  a. Not contest facts agreed to in this agreement.

  b. At the time of sentencing, request that this Court impose a sentence of 48 months of imprisonment.

  c. Abide by all agreements regarding sentencing contained in this agreement.

  d. At the time of sentencing, move to dismiss the remaining counts of the superseding indictment and the underlying indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges

4

1   in determining the applicable Sentencing Guidelines range, the

2   propriety and extent of any departure from that range, and the

3   sentence to be imposed.

4          e.   At the time of sentencing, provided that defendant

5   demonstrates an acceptance of responsibility for the offense up to

6   and including the time of sentencing, recommend a two-level reduction

7   in the applicable Sentencing Guidelines offense level, pursuant to

8   U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

9   additional one-level reduction if available under that section.

10         f.   Defendant may apply for a prison transfer to allow him

11  to serve a portion of his custodial sentence in Israel.  The USAO has

12  no authority regarding such applications, the approval of which is

13  exclusively within the discretion of other federal government

14  agencies and authorities in the United States and Israel.  However,

15  if consulted, the USAO agrees not to oppose defendant's application

16  for a prison transfer.

17                         NATURE OF THE OFFENSE

18         4.   Defendant understands that for defendant to be guilty of

19  the crime charged in count two of the First Superseding Indictment,

20  that is, bank fraud, in violation of Title 18, United States Code,

21  Section 1344(2), the following must be true: (1) defendant knowingly

22  carried out a scheme or plan to obtain money or property from United

23  Commercial Bank ("UCB") by making false statements or promises;

24  (2) defendant knew that the statements or promises were false;

25  (3) the statements or promises were material; that is, they had a

26  natural tendency to influence, or were capable of influencing, a

27  financial institution to part with money or property; (4) defendant

28  acted with the intent to defraud; and (5) UCB was federally insured.

## PENALTIES AND RESTITUTION

5.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1344(2), is: 30 years of imprisonment; a 5-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.   Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result:   (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.   The parties currently believe that the applicable amount of restitution is approximately $33,000,000, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

7.   Defendant agrees that any and all fines and/or restitution ordered by the Court will be due immediately.  The government is not

6

1   precluded from pursuing, in excess of any payment schedule set by the
2   Court, any and all available remedies by which to satisfy defendant's
3   payment of the full financial obligation, including referral to the
4   Treasury Offset Program.

5        8.    Defendant understands that supervised release is a period
6   of time following imprisonment during which defendant will be subject
7   to various restrictions and requirements. Defendant understands that
8   if defendant violates one or more of the conditions of any supervised
9   release imposed, defendant may be returned to prison for all or part
10  of the term of supervised release authorized by statute for the
11  offense that resulted in the term of supervised release, which could
12  result in defendant serving a total term of imprisonment greater than
13  the statutory maximum stated above.

14       9.    Defendant understands that, by pleading guilty, defendant
15  may be giving up valuable government benefits and valuable civic
16  rights, such as the right to vote, the right to possess a firearm,
17  the right to hold office, and the right to serve on a jury. Defendant
18  understands that once the Court accepts defendant's guilty plea, it
19  will be a federal felony for defendant to possess a firearm or
20  ammunition.  Defendant understands that the conviction in this case
21  may also subject defendant to various other collateral consequences,
22  including but not limited to revocation of probation, parole, or
23  supervised release in another case and suspension or revocation of a
24  professional license. Defendant understands that unanticipated
25  collateral consequences will not serve as grounds to withdraw
26  defendant's guilty plea.

27

28

7

10.   Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future. The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case. Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

11.   Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts attached as Exhibit A and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 13 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

SENTENCING FACTORS

12.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated

Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

13.  Defendant and the USAO agree to the following applicable Sentencing Guidelines factors[1]:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Specific Offense Characteristics | | |
| Loss between $20-$50 million: | +22 | U.S.S.G. § 2B1.1(b)(1)(L) |
| More than $1 million obtained from financial institution | +2 | U.S.S.G. § 2B1.1(b)(12)(A) |
| Acceptance of Responsibility | -3 | U.S.S.G. § 3E1.1(a), (b) |
| Total Offense Level: | 28 | |

The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 3(d) are met and if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as discussed below.  Subject to paragraph 27 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed.

---

[1] In recognition of Peugh v. United States, 569 U.S. 530 (2013), the parties agree to application of the Sentencing Guidelines in effect at the time of defendant's offense (the Sentencing Guidelines Manual in effect as of November 5, 2003).

1   Defendant agrees, however, that if, after signing this agreement but
2   prior to sentencing, defendant were to commit an act, or the USAO
3   were to discover a previously undiscovered act committed by defendant
4   prior to signing this agreement, which act, in the judgment of the
5   USAO, constituted obstruction of justice within the meaning of
6   U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set
7   forth in that section and to argue that defendant is not entitled to
8   a downward adjustment for acceptance of responsibility under U.S.S.G
9   § 3E1.1.

10     14. Defendant understands that there is no agreement as to
11   defendant's criminal history or criminal history category.

12     15. Defendant and the USAO agree that, taking into account the
13   factors listed in 18 U.S.C. § 3553(a)(1)-(7), a downward five-level
14   variance and a sentence of 48 months of imprisonment is warranted
15   based on defendant's early and extraordinary acceptance of
16   responsibility, including, but not limited to, his agreement to
17   proceed by way of VTC for all court proceedings, his waiver of
18   extradition before the Israel Supreme Court, and his waiver of all
19   appellate rights, and defendant's family and medical circumstances.
20   Therefore, subject to paragraph 27 below and this agreed-upon five-
21   level downward variance, defendant and the USAO agree not to argue,
22   either orally or in writing, that the Court not follow the sentencing
23   recommendation of the parties to impose a term of 48 months of
24   imprisonment.

25               WAIVER OF CONSTITUTIONAL RIGHTS

26     16. Defendant understands that by pleading guilty, defendant
27   gives up the following rights:

28         a. The right to persist in a plea of not guilty.

b.    The right to a speedy and public trial by jury.

c.    The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

                    WAIVER OF APPEAL OF CONVICTION

17.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that

1  the statement of facts provided herein is insufficient to support
2  defendant's plea of guilty.

### LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

4  18.   Defendant gives up the right to appeal all of the
5  following: (a) the procedures and calculations used to determine and
6  impose any portion of the sentence; (b) the term of imprisonment
7  imposed by the Court, provided it is no more than the high-end of
8  the Sentencing Guidelines range calculated by the Court; (c) the
9  fine imposed by the Court, provided it is within the statutory
10  maximum; (d) to the extent permitted by law, the constitutionality
11  or legality of defendant's sentence, provided it is within the
12  statutory maximum; (e) the amount and terms of any restitution
13  order, provided it requires payment of no more than $33,000,000;
14  (f) the term of probation or supervised release imposed by the
15  Court, provided it is within the statutory maximum; and (g) any of
16  the following conditions of probation or supervised release imposed
17  by the Court: the conditions set forth in Amended General Order 20-
18  04 of this Court; the drug testing conditions mandated by 18 U.S.C.
19  §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions
20  authorized by 18 U.S.C. § 3563(b)(7).

21  19.   The USAO agrees that, provided all portions of the sentence
22  are at or below the statutory maximum specified above, the USAO gives
23  up its right to appeal any portion of the sentence, with the
24  exception that the USAO reserves the right to appeal the amount of
25  restitution ordered if that amount is less than $33,000,000.

### WAIVER OF COLLATERAL ATTACK

27  20.   Defendant also gives up any right to bring a post-
28  conviction collateral attack on the conviction or sentence, including

1   any order of restitution, except a post-conviction collateral attack

2   based on a claim of ineffective assistance of counsel, a claim of

3   newly discovered evidence, or an explicitly retroactive change in the

4   applicable Sentencing Guidelines, sentencing statutes, or statutes of

5   conviction. Defendant understands that this waiver includes, but is

6   not limited to, arguments that the statute to which defendant is

7   pleading guilty is unconstitutional, and any and all claims that the

8   statement of facts provided herein is insufficient to support

9   defendant's plea of guilty.

10   <u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

11      21.   Defendant agrees that if, after entering a guilty plea

12   pursuant to this agreement, defendant seeks to withdraw and succeeds

13   in withdrawing defendant's guilty plea on any basis other than a

14   claim and finding that entry into this plea agreement was

15   involuntary, then (a) the USAO will be relieved of all of its

16   obligations under this agreement and (b) should the USAO choose to

17   pursue any charge that was either dismissed or not filed as a result

18   of this agreement, then (i) any applicable statute of limitations

19   will be tolled between the date of defendant's signing of this

20   agreement and the filing commencing any such action; and

21   (ii) defendant waives and gives up all defenses based on the statute

22   of limitations, any claim of pre-indictment delay, or any speedy

23   trial claim with respect to any such action, except to the extent

24   that such defenses existed as of the date of defendant's signing this

25   agreement.

26   //

27

28

1

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

2     22.  Defendant agrees that if the count of conviction is

3  vacated, reversed, or set aside, both the USAO and defendant will be

4  released from all their obligations under this agreement.

5

## EFFECTIVE DATE OF AGREEMENT

6     23.  This agreement is effective upon signature and execution of

7  all required certifications by defendant, defendant's counsel, and an

8  Assistant United States Attorney.

9

## BREACH OF AGREEMENT

10     24.  Defendant agrees that if defendant, at any time after the

11  effective date of this agreement, knowingly violates or fails to

12  perform any of defendant's obligations under this agreement ("a

13  breach"), the USAO may declare this agreement breached.  All of

14  defendant's obligations are material, a single breach of this

15  agreement is sufficient for the USAO to declare a breach, and

16  defendant shall not be deemed to have cured a breach without the

17  express agreement of the USAO in writing. If the USAO declares this

18  agreement breached, and the Court finds such a breach to have

19  occurred, then: (a) if defendant has previously entered a guilty plea

20  pursuant to this agreement, defendant will not be able to withdraw

21  the guilty plea, and (b) the USAO will be relieved of all its

22  obligations under this agreement.

23     25.  Following the Court's finding of a knowing breach of this

24  agreement by defendant, should the USAO choose to pursue any charge

25  that was either dismissed or not filed as a result of this agreement,

26  then:

27

28

a.    Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.    Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.    Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

26.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

27.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information

15

1   to the United States Probation and Pretrial Services Office and the
2   Court, (b) correct any and all factual misstatements relating to the
3   Court's Sentencing Guidelines calculations and determination of
4   sentence, and (c) argue on appeal and collateral review that the
5   Court's Sentencing Guidelines calculations and the sentence it
6   chooses to impose are not error, although each party agrees to
7   maintain its view that the calculations in paragraph 13 are
8   consistent with the facts of this case.  While this paragraph permits
9   both the USAO and defendant to submit full and complete factual
10  information to the United States Probation and Pretrial Services
11  Office and the Court, even if that factual information may be viewed
12  as inconsistent with the facts agreed to in this agreement, this
13  paragraph does not affect defendant's and the USAO's obligations not
14  to contest the facts agreed to in this agreement.

15      28.  Defendant understands that even if the Court ignores any
16  sentencing recommendation, finds facts or reaches conclusions
17  different from those agreed to, and/or imposes any sentence up to the
18  maximum established by statute, defendant cannot, for that reason,
19  withdraw defendant's guilty plea, and defendant will remain bound to
20  fulfill all defendant's obligations under this agreement. Defendant
21  understands that no one -- not the prosecutor, defendant's attorney,
22  or the Court -- can make a binding prediction or promise regarding
23  the sentence defendant will receive, except that it will be within
24  the statutory maximum.

                          NO ADDITIONAL AGREEMENTS

26      29.  Defendant understands that, except as set forth herein,
27  there are no promises, understandings, or agreements between the USAO
28  and defendant or defendant's attorney, and that no additional

promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

### PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

30.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

NICOLA T. HANNA
United States Attorney

_____          11/12/20
STEVEN M. ARKOW                              Date
Assistant United States Attorney


_____          11/10/20
AVIV MIZRAHI                                 Date
Defendant


_____          11/10/20
CHARLES L. KREINDLER                         Date
Attorney for Defendant AVIV MIZRAHI

17

CERTIFICATION OF DEFENDANT

This agreement has been read to me in its entirety in Hebrew, the language I understand best. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____         NOV, 12, 2020
AVIV MIZRAHI                              Date
Defendant

CERTIFICATION OF INTERPRETER

I, James Vichman [PRINT INTERPRETER NAME], am fluent in the written and spoken English and Hebrew languages. I accurately translated this entire agreement from English into Hebrew to defendant AVIV MIZRAHI on this date.

_____         11-12-20
INTERPRETER                              Date

18

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Aviv Mizrahi's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of her rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

_____        _____11/12/20_____
CHARLES L. KREINDLER                              Date
Attorney for Defendant
AVIV MIZRAHI

19

1    Exhibit A (Statement of Facts In Support of Plea Agreement)

2    Beginning in or about February 2004, and continuing through in

3    or about June 2008, in Los Angeles County, within the Central

4    District of California, and elsewhere, defendant AVIV MIZRAHI

5    ("defendant MIZRAHI" or "defendant"), also known as "Aviv Shoham

6    Schwartz," and co-defendant Aryeh Greenes ("co-defendant Greenes"),

7    knowingly and with intent to defraud, executed a scheme to obtain

8    moneys and funds owned by and in the custody and control of

9    TomatoBank (aka InterBusiness Bank), United Commercial Bank ("UCB"),

10   and Security Pacific Bank ("SPB") (collectively, the "Victim Banks")

11   by means of material false and fraudulent pretenses, representations,

12   and promises, and the concealment of material facts. At all times

13   relevant to the scheme, the Victim Banks were financial institutions,

14   within the meaning of 18 U.S.C. § 20, in that their accounts and

15   deposits were federally insured by the Federal Deposit Insurance

16   Corporation.

17   During the course of this scheme, defendant MIZRAHI resided in

18   Los Angeles, California and as president and chief executive officer,

19   operated and controlled electronic wholesalers of televisions and DVD

20   players, including Tech Club, Inc.("Tech Club"), New Electronic, Inc.

21   ("New Electronic"), and NU Electronics, Inc. ("NU Electronics").  In

22   approximately 2007, New Electronic changed its name to NU

23   Electronics.  These companies conducted business from offices and

24   warehouses located in the Central District of California.  Defendant

25   MIZRAHI also conducted business under the name Electro Star, the

26   predecessor company to New Electronic and NU Electronics, and

27   operated a retail electronic business under the name Star Club.  Co-

28

defendant Greenes was the chief financial officer of defendant
MIZRAHI's various companies, including Tech Club and New Electronic.

To execute the scheme, defendant MIZRAHI applied for separate
loans in the form of revolving lines of credit from each of the
Victim Banks, and subsequently applied for extensions, increases to
the loan amounts, and modifications of those loans.  Specifically,
after executing these initial agreements, defendant MIZRAHI
subsequently signed agreements for extensions, loan amount increases,
and modifications to the above- referenced loans.

In submitting these loan agreements, defendant MIZRAHI made and
willfully caused to be made to the Victim Banks a series of material
false, fraudulent, and misleading pretenses, representations, and
promises.  These included, but were not limited to all of the
following:  (1) that the borrower had a certain dollar amount of
collateral to secure the loan amount at issue, when in truth and in
fact, as defendant MIZRAHI and co-defendant Greenes then well knew,
the borrower had significantly less collateral than the amount at
issue represented to the Victim Banks; (2) that the borrower had a
certain dollar amount of sales, when in truth and in fact, as
defendant MIZRAHI and co-defendant Greenes then well knew, the
borrowers' sales were significantly less than the amount represented
to the Victim Banks; and (3) that the borrower had certain prominent
customers, when in truth and in fact, as defendants MIZRAHI and co-
defendant Greenes then well knew, the borrower did not sell any
merchandise to the named customers.  To further this scheme,
defendant MIZRAHI created and caused to be created false and
fraudulent documents that were submitted in support of the loan
applications, extensions, increases, and modifications, to one or

1   more of the Victim Banks, including (1) false corporate and personal

2   federal tax returns that were not filed with the Internal Revenue

3   service ("IRS"), which listed income amounts and sales amounts that

4   were materially higher than the amounts reported on the tax returns

5   that were actually filed with the IRS; (2) false and fraudulent

6   financial statements showing fabricated sales, accounts receivable,

7   and inventory, among other things; (3) borrowing base certificates

8   showing fabricated accounts receivable and inventory; and (4)

9   collateral schedules showing fabricated accounts receivable and

10  inventory.

11      Upon receiving the loan funds from the Victim Banks, defendant

12  MIZRAHI and co-defendant Greenes used the funds to: (1) make payments

13  on loans obtained from other banks, namely, using funds from UCB to

14  make payments on loans obtained from TomatoBank and First Bank; and

15  (2) purchase cashier's checks in the names of purported customers in

16  order to give the false appearance that these customers were

17  conducting legitimate business with the borrower.

18      In order to execute this scheme, defendant MIZRAHI took the

19  following steps: (1) in or about February 2004, defendant MIZRAHI

20  signed, on behalf of Star Club (later changed to Tech Club), the

21  initial loan agreement with TomatoBank for a revolving line of credit

22  in the amount of $2,000,000; (2) on or about April 27, 2004,

23  defendant MIZRAHI signed, on behalf of New Electronic, the initial

24  loan agreement with UCB for a revolving line of credit in the amount

25  of $10,000,000; and (3) on or about April 17, 2006, defendant MIZRAHI

26  signed, on behalf of Tech Club, the initial loan agreement with SPB

27  for a revolving line of credit in the amount of $3,750,000.

28

1    In applying for the $10,000,000 loan on behalf of New
2  Electronic, defendant MIZRAHI and co-defendant Greenes submitted and
3  caused to be submitted to UCB false and fraudulent information.   For
4  instance, on or about February 23, 2004, within the Central District
5  of California and elsewhere, defendant MIZRAHI and co-defendant
6  Greenes submitted and caused to be submitted to UCB a fraudulent
7  account receivable aging report dated November 30, 2003 for defendant
8  MIZRAHI's company, Electro Star, showing $13,042,958.32 in accounts
9  receivable due to Electro Star ("November 2003 account receivable
10 aging report"), which was the predecessor company to New Electronic
11 and NU Electronics.   To cause the creation of the November 2003
12 account receivable aging report, defendant MIZRAHI provided to his
13 companies' bookkeeper fraudulent documents, including fabricated bank
14 statements for an account in the name of New Electronic Inc. dba
15 Electro Star purporting to show bank deposits of payments on accounts
16 receivable received from customers.   The bookkeeper then used this
17 and other information provided by defendant MIZRAHI to prepare
18 various financial documents, including the November 2003 account
19 receivable aging report.   The November 2003 account receivable aging
20 report, as defendant MIZRAHI and co-defendant Greenes well knew,
21 reflected a grossly inflated fraudulent amount due to Electro Star.
22 Specifically, the report included customers that did not exist and
23 customers that did not purchase the products from Electro Star.   In
24 some instances, the shipping addresses listed on documents for
25 Electro Star's purported customers were: (a) a small postal office
26 mailbox unit rented by and in the name of defendant MIZRAHI; (b) a
27 personal residence that did not conduct business to purchase
28 electronic products; (c) a trucking business that did not purchase

electronic products; and (d) an address whose physical location does not appear to exist.  At least 40% of the November 2003 account receivables aging report was fraudulent.  The November 2003 account receivable aging report was material to UCB's decision to fund the $10,000,000 loan.

In addition, in order to determine whether to fund the loan, UCB hired an outside independent firm to conduct a collateral examination of Electro Star's books and records.  Defendant MIZRAHI and co-defendant Greenes submitted and caused to be submitted to this outside firm material false and fraudulent information, including false and fraudulent financial statements showing fabricated sales, accounts receivable, and inventory, among other things.  Based on this fabricated and fraudulent material information, the outside firm recommended that UCB fund the loan, and UCB decided to loan $10,000,000 to New Electronic, Inc.  As a result of defendant MIZRAHI's fraudulent scheme, UCB disbursed $10,000,000 to New Electronic, Inc. on May 7, 2004.

As a result of defendant MIZRAHI's fraudulent scheme, the Victim Banks sustained the following approximate losses:

i.  SPB - $5,000,000;

ii.  UCB - $28,000,000; and

iii. TomatoBank - $183,000.

//

//

1

2   CERTIFICATION OF DEFENDANT

3   This STATEMENT OF FACTS IN SUPPORT OF PLEA AGREEMENT ("statement
of facts") has been read to me in its entirety in Hebrew, the

4   language I understand best.  I have had enough time to review and

5   consider this statement of facts, and I have carefully and thoroughly

6   discussed every part of it with my attorney.  I agree that this

7   statement of facts is accurate and correct, and is sufficient to

8   support a plea of guilty to the charge described in the plea

9   agreement and to establish the Sentencing Guidelines factors set

10  forth in paragraph 13 of the plea agreement.

11  _____        11-12-2020
                                           _____
    AVIV MIZRAHI                           Date
12  Defendant

13  CERTIFICATION OF INTERPRETER

14  I, _James Vickman___, am fluent in the written and spoken

15  English and Hebrew languages.  I accurately translated this entire

16  statement of facts from English into Hebrew to defendant Aviv Mizrahi

17  on this date.

18  _____        11-12-2020
                                           _____
    INTERPRETER                            Date
19

20  CERTIFICATION OF DEFENDANT'S ATTORNEY

21  I am AVIV MIZRAHI'S attorney.  I have carefully and thoroughly

22  discussed every part of this statement of facts with my client and

23  agree that it is sufficient to support a plea of guilty to the charge

24  described in the plea agreement and to establish the Sentencing

25  Guidelines factors set forth in paragraph 13 of the plea agreement.

26

27  _____        11/12/20
                                           _____
    CHARLES L. KREINDLER                   Date
28  Attorney for Defendant AVIV MIZRAHI

25