TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
STEVEN M. ARKOW (Cal. Bar No. 143755)
Assistant United States Attorney
Major Frauds Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-6975
Facsimile: (213) 894-6269
E-mail: steven.arkow@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 12-467(A)-JAK |
|---|---|
| Plaintiff, | (AMENDED) PLEA AGREEMENT FOR DEFENDANT ARYEH GREENES |
| v. | |
| ARYEH GREENES, | |
| Defendant. | |

1.    This constitutes the plea agreement between defendant ARYEH
GREENES and the United States Attorney's Office for the Central
District of California (the "USAO") in the above-captioned case.
This agreement is limited to the USAO and cannot bind any other
federal, state, local, or foreign prosecuting, enforcement,
administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.    Defendant agrees to:

a.    At the earliest opportunity requested by the USAO and
provided by the Court, appear and plead guilty to count ten of the

1

First Superseding Indictment in <u>United States v. Aryeh Greenes</u>, CR No. 12-467(A)-JAK, which charges defendant with bank fraud, in violation of 18 U.S.C. § 1344(2).

        b.   Not contest facts agreed to in this agreement.

        c.   Abide by all agreements regarding sentencing contained in this agreement.

        d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

        e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

        f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

        g.   Pay the applicable special assessment at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessment.

        h.   Authorize the USAO to obtain a credit report immediately upon defendant's entry of a guilty plea.

        i.   Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

        j.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov or mail to the USAO Financial Litigation

1 | Section at 300 N. Los Angeles Street, Suite 7516, Los Angeles, CA
2 | 90012.

3 |     k.    Not commit any crime or any act constituting
4 | obstruction of justice; however, offenses that would be excluded for
5 | sentencing purposes under United States Sentencing Guidelines
6 | ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the
7 | scope of this agreement.

8 | THE USAO'S OBLIGATIONS

9 |    3.    The USAO agrees to:

10 |     a.    Not contest facts agreed to in this agreement.

11 |     b.    Abide by all agreements regarding sentencing contained
12 | in this agreement.

13 |     c.    At the time of sentencing, move to dismiss the
14 | remaining counts of the superseding indictment. Defendant agrees,
15 | however, that at the time of sentencing the Court may consider any
16 | dismissed charges in determining the applicable Sentencing Guidelines
17 | range, the propriety and extent of any departure from that range, and
18 | the sentence to be imposed.

19 |     d.    At the time of sentencing, provided that defendant
20 | demonstrates an acceptance of responsibility for the offense up to
21 | and including the time of sentencing, recommend a two-level reduction
22 | in the applicable Sentencing Guidelines offense level, pursuant to
23 | U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
24 | additional one-level reduction if available under that section.

25 | NATURE OF THE OFFENSE

26 |    4.    Defendant understands that for defendant to be guilty of
27 | the crime charged in count ten of the First Superseding Indictment,
28 | that is, bank fraud, in violation of Title 18, United States Code,

Section 1344(2), the following must be true: (1) defendant knowingly carried out a scheme or plan to obtain money or property from United Commercial Bank ("UCB") by making false statements or promises; (2) defendant knew that the statements or promises were false; (3) the statements or promises were material; that is, they had a natural tendency to influence, or were capable of influencing, a financial institution to part with money or property; (4) defendant acted with the intent to defraud; and (5) UCB was federally insured. Defendant acted knowingly if he was aware of a high probability that money or property from UCB was being obtained by means of material false or promises, and deliberately avoided learning the truth.

## PENALTIES AND RESTITUTION

5.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1344(2), is: 30 years of imprisonment; a 5-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

6.    Defendant understands that defendant will be required to pay full restitution to the victim(s) of the offense to which defendant is pleading guilty.  Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victim(s) of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty.  In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct,

4

as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts.  The parties currently believe that the applicable amount of restitution is approximately $20,183,000, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

7.    Defendant agrees that any and all fines and/or restitution ordered by the Court will be due immediately.  The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

8.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.    Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the Court accepts defendant's guilty plea, it

will be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

10.  Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to: removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future. The Court cannot, and defendant's attorney also may not be able to, advise defendant fully regarding the immigration consequences of the felony conviction in this case. Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty plea.

FACTUAL BASIS

11.  Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts attached as Exhibit A and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 13 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

## SENTENCING FACTORS

12.   Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

13.   Defendant and the USAO agree to the following applicable Sentencing Guidelines factors[1]:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Specific Offense Characteristics | | |
| Loss between $9.5-$25 million: | +20 | U.S.S.G. § 2B1.1(b)(1)(K) |
| Mitigating role | -2 | U.S.S.G. § 3B1.2) |
| Acceptance of Responsibility | -3 | U.S.S.G. § 3E1.1(a), (b) |
| Total Offense Level: | 22 | |

The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the

---

[1] In recognition of <u>Peugh v. United States</u>, 569 U.S. 530 (2013), the parties agree to application of the current edition of the United States Sentencing Guidelines.

conditions set forth in paragraph 3(d) are met and if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as discussed below.  Subject to paragraph 27 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed. Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G § 3E1.1.

14.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

15.  Defendant and the USAO agree that, based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3) and (a)(7), a sentence outside the sentencing range otherwise established by the Sentencing Guidelines and within the range established for an adjusted offense level of 11 is appropriate in consideration of the nature and circumstances of the offense, including that the correct calculation of the loss attributable to the scheme, as agreed to by the parties, overstates defendant's culpability; the defendant's history and characteristics, including his mental and physical health circumstances and his record of community service; and the adequate

1  deterrence to criminal conduct that such a sentence will provide
2  given that defendant presents a low risk of recidivism.  Defendant
3  reserves the right to make additional arguments for a sentence
4  outside the sentencing range established by the Sentencing Guidelines
5  based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2),
6  (a)(3), (a)(6), and (a)(7).

7                    WAIVER OF CONSTITUTIONAL RIGHTS

8      16. Defendant understands that by pleading guilty, defendant
9  gives up the following rights:

10          a.   The right to persist in a plea of not guilty.

11          b.   The right to a speedy and public trial by jury.

12          c.   The right to be represented by counsel -- and if
13  necessary have the Court appoint counsel -- at trial. Defendant
14  understands, however, that, defendant retains the right to be
15  represented by counsel -- and if necessary have the Court appoint
16  counsel -- at every other stage of the proceeding.

17          d.   The right to be presumed innocent and to have the
18  burden of proof placed on the government to prove defendant guilty
19  beyond a reasonable doubt.

20          e.   The right to confront and cross-examine witnesses
21  against defendant.

22          f.   The right to testify and to present evidence in
23  opposition to the charges, including the right to compel the
24  attendance of witnesses to testify.

25          g.   The right not to be compelled to testify, and, if
26  defendant chose not to testify or present evidence, to have that
27  choice not be used against defendant.

28

1        h.    Any and all rights to pursue any affirmative defenses,

2  Fourth Amendment or Fifth Amendment claims, and other pretrial

3  motions that have been filed or could be filed.

4  WAIVER OF APPEAL OF CONVICTION

5      17.  Defendant understands that, with the exception of an appeal

6  based on a claim that defendant's guilty plea was involuntary, by

7  pleading guilty defendant is waiving and giving up any right to

8  appeal defendant's conviction on the offense to which defendant is

9  pleading guilty. Defendant understands that this waiver includes,

10  but is not limited to, arguments that the statute to which defendant

11  is pleading guilty is unconstitutional, and any and all claims that

12  the statement of facts provided herein is insufficient to support

13  defendant's plea of guilty.

14  LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

15      18.  Defendant gives up the right to appeal all of the

16  following: (a) the procedures and calculations used to determine and

17  impose any portion of the sentence; (b) the term of imprisonment

18  imposed by the Court, provided it is no more than the high-end of

19  the Sentencing Guidelines range calculated by the Court; (c) the

20  fine imposed by the Court, provided it is within the statutory

21  maximum; (d) to the extent permitted by law, the constitutionality

22  or legality of defendant's sentence, provided it is within the

23  statutory maximum; (e) the amount and terms of any restitution

24  order, provided it requires payment of no more than $20,183,000;

25  (f) the term of probation or supervised release imposed by the

26  Court, provided it is within the statutory maximum; and (g) any of

27  the following conditions of probation or supervised release imposed

28  by the Court: the conditions set forth in Second Amended General

1  Order 20-04 of this Court; the drug testing conditions mandated by

2  18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use

3  conditions authorized by 18 U.S.C. § 3563(b)(7).

4      19.  The USAO agrees that, provided all portions of the sentence

5  are at or below the statutory maximum specified above, the USAO gives

6  up its right to appeal any portion of the sentence, with the

7  exception that the USAO reserves the right to appeal the amount of

8  restitution ordered if that amount is less than $20,183,000.

9  WAIVER OF COLLATERAL ATTACK

10      20.  Defendant also gives up any right to bring a post-

11  conviction collateral attack on the conviction or sentence, including

12  any order of restitution, except a post-conviction collateral attack

13  based on a claim of ineffective assistance of counsel, a claim of

14  newly discovered evidence, or an explicitly retroactive change in the

15  applicable Sentencing Guidelines, sentencing statutes, or statutes of

16  conviction. Defendant understands that this waiver includes, but is

17  not limited to, arguments that the statute to which defendant is

18  pleading guilty is unconstitutional, and any and all claims that the

19  statement of facts provided herein is insufficient to support

20  defendant's plea of guilty.

21  RESULT OF WITHDRAWAL OF GUILTY PLEA

22      21.  Defendant agrees that if, after entering a guilty plea

23  pursuant to this agreement, defendant seeks to withdraw and succeeds

24  in withdrawing defendant's guilty plea on any basis other than a

25  claim and finding that entry into this plea agreement was

26  involuntary, then (a) the USAO will be relieved of all of its

27  obligations under this agreement and (b) should the USAO choose to

28  pursue any charge that was either dismissed or not filed as a result

of this agreement, then (i) any applicable statute of limitations
will be tolled between the date of defendant's signing of this
agreement and the filing commencing any such action; and
(ii) defendant waives and gives up all defenses based on the statute
of limitations, any claim of pre-indictment delay, or any speedy
trial claim with respect to any such action, except to the extent
that such defenses existed as of the date of defendant's signing this
agreement.

RESULT OF VACATUR, REVERSAL OR SET-ASIDE

22. Defendant agrees that if the count of conviction is
vacated, reversed, or set aside, both the USAO and defendant will be
released from all their obligations under this agreement.

EFFECTIVE DATE OF AGREEMENT

23. This agreement is effective upon signature and execution of
all required certifications by defendant, defendant's counsel, and an
Assistant United States Attorney.

BREACH OF AGREEMENT

24. Defendant agrees that if defendant, at any time after the
effective date of this agreement, knowingly violates or fails to
perform any of defendant's obligations under this agreement ("a
breach"), the USAO may declare this agreement breached. All of
defendant's obligations are material, a single breach of this
agreement is sufficient for the USAO to declare a breach, and
defendant shall not be deemed to have cured a breach without the
express agreement of the USAO in writing. If the USAO declares this
agreement breached, and the Court finds such a breach to have
occurred, then: (a) if defendant has previously entered a guilty plea
pursuant to this agreement, defendant will not be able to withdraw

1  the guilty plea, and (b) the USAO will be relieved of all its
2  obligations under this agreement.

3      25.   Following the Court's finding of a knowing breach of this
4  agreement by defendant, should the USAO choose to pursue any charge
5  that was either dismissed or not filed as a result of this agreement,
6  then:

7          a.    Defendant agrees that any applicable statute of
8  limitations is tolled between the date of defendant's signing of this
9  agreement and the filing commencing any such action.

10          b.    Defendant waives and gives up all defenses based on
11  the statute of limitations, any claim of pre-indictment delay, or any
12  speedy trial claim with respect to any such action, except to the
13  extent that such defenses existed as of the date of defendant's
14  signing this agreement.

15          c.    Defendant agrees that: (i) any statements made by
16  defendant, under oath, at the guilty plea hearing (if such a hearing
17  occurred prior to the breach); (ii) the agreed to factual basis
18  statement in this agreement; and (iii) any evidence derived from such
19  statements, shall be admissible against defendant in any such action
20  against defendant, and defendant waives and gives up any claim under
21  the United States Constitution, any statute, Rule 410 of the Federal
22  Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal
23  Procedure, or any other federal rule, that the statements or any
24  evidence derived from the statements should be suppressed or are
25  inadmissible.

26  //

27

28

13

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

OFFICE NOT PARTIES

26.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

27.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 13 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

28.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to

14

1  fulfill all defendant's obligations under this agreement. Defendant

2  understands that no one -- not the prosecutor, defendant's attorney,

3  or the Court -- can make a binding prediction or promise regarding

4  the sentence defendant will receive, except that it will be within

5  the statutory maximum.

6  NO ADDITIONAL AGREEMENTS

7     29.   Defendant understands that, except as set forth herein,

8  there are no promises, understandings, or agreements between the USAO

9  and defendant or defendant's attorney, and that no additional

10  promise, understanding, or agreement may be entered into unless in a

11  writing signed by all parties or on the record in court.

12  PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

13     30.   The parties agree that this agreement will be considered

14  part of the record of defendant's guilty plea hearing as if the

15  entire agreement had been read into the record of the proceeding.

16  AGREED AND ACCEPTED
   UNITED STATES ATTORNEY'S OFFICE
17  FOR THE CENTRAL DISTRICT OF
   CALIFORNIA
18  TRACY L. WILKISON
   United States Attorney

19

20  _Steven M. Arkow_                    February 24, 2022

   STEVEN M. ARKOW                       Date
21  Assistant United States Attorney

22  _Aryeh Greenes_                       FEB. 24, 2022

23  ARYEH GREENES                         Date
   Defendant

24

25  _Jan L. Handzlik_                     2 - 24 - 2022

   JAN L. HANDZLIK                        Date
26  Attorney for Defendant
   ARYEH GREENES

27

28

15

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charge and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          FEB. 24, 2022
ARYEH GREENES                       Date
Defendant

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am ARYEH GREENES's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of her rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of a guilty plea pursuant to this agreement.

2-24-2022
Date

JAN L. HANDZLIK
Attorney for Defendant
ARYEH GREENES

1    **Exhibit A (Statement of Facts In Support of Plea Agreement)**

2    Beginning in or about as early as February 2004 but no later

3    than May 2004, and continuing through in or about October 2005, in

4    Los Angeles County, within the Central District of California, and

5    elsewhere, defendant ARYEH GREENES ("defendant GREENES" or

6    "defendant"), and co-defendant Aviv Mizrahi ("co-defendant Mizrahi"),

7    knowingly and with intent to defraud, executed a scheme to obtain

8    moneys and funds owned by and in the custody and control of

9    TomatoBank (aka InterBusiness Bank) and United Commercial Bank

10   ("UCB") (collectively, the "Victim Banks") by means of material false

11   and fraudulent statements, representations, and promises, and the

12   concealment of material facts.  At all times relevant to the scheme,

13   the Victim Banks were financial institutions, within the meaning of

14   18 U.S.C. § 20, in that their accounts and deposits were federally

15   insured by the Federal Deposit Insurance Corporation.

16   During the course of this scheme, co-defendant Mizrahi was

17   president and chief executive officer and operated and controlled

18   electronic wholesalers of televisions and DVD players, including Tech

19   Club, Inc.("Tech Club"), New Electronic, Inc. ("New Electronic"), and

20   NU Electronics, Inc. ("NU Electronics").  These companies conducted

21   business from offices and warehouses located in the Central District

22   of California.  Defendant GREENES, a resident of Los Angeles County,

23   held himself out at meetings with the Victim Bank UCB and signed

24   documents submitted to Victim Bank UCB representing that he was the

25   chief financial officer of co-defendant Mizrahi's various companies,

26   including Tech Club and New Electronic.

27   To execute the scheme, co-defendant Mizrahi applied for separate

28   loans in the form of revolving lines of credit from each of the

1    Victim Banks, and subsequently applied for extensions, increases to
2    the loan amounts, and modifications of those loans.

3          In submitting these loan documents, co-defendant Mizrahi made
4    and willfully directed defendant GREENES to make to the Victim Banks
5    a series of material false, fraudulent, and misleading statements,
6    representations, and promises.  In making these statements,
7    representations, and promises, defendant GREENES acted knowingly in
8    that GREENES knew that they were false, fraudulent, and misleading,
9    or, at a minimum, GREENES was aware of a high probability that they
10   were false, fraudulent and misleading, and GREENES deliberately
11   avoided learning the truth.  These false statements, representations,
12   and promises included, but were not limited to all of the following:
13   (1) that the borrower had a certain dollar amount of collateral to
14   secure the loan amount at issue, when in truth and in fact, the
15   borrower had significantly less collateral than the amount at issue
16   represented to the Victim Banks; (2) that the borrower had certain
17   dollar amounts of sales and of accounts receivable, when in truth and
18   in fact, the borrower's sales and accounts receivable were
19   significantly less than the amounts represented to the Victim Banks;
20   and (3) that the borrower had certain prominent customers, when in
21   truth and in fact, the borrower did not sell the merchandise to the
22   named customers.  To the extent that defendant GREENES merely was
23   aware of a high probability that the above-referenced material
24   statements, representations, and promises to UCB regarding the
25   borrower's collateral, sales, accounts receivable, and customers were
26   false, fraudulent, and misleading, GREENES deliberately avoided
27   learning the truth, and, therefore, defendant was willfully blind to
28   the fraud on UCB that was occurring.

1    Upon receiving the loan funds from the Victim Banks, co-
2  defendant Mizrahi used the funds to: (1) make payments on loans
3  obtained from other banks, namely, using funds from UCB to make
4  payments on loans obtained from TomatoBank and First Bank; and
5  (2) directed defendant GREENES to purchase cashier's checks in the
6  names of purported customers in order to give the false appearance
7  that these customers were conducting legitimate business with the
8  borrower.  Specifically, from in or about August 2004 through about
9  October 2005, defendant GREENES conducted numerous banking
10  transactions including the purchase of approximately more than
11  $4,700,000 in cashier's checks, which were purchased in the names of
12  purported customers.

13    In order to execute this scheme, co-defendant Mizrahi took the
14  following steps: (1) in or about February 2004, co-defendant Mizrahi
15  signed, on behalf of Star Club (later changed to Tech Club), the
16  initial loan agreement with TomatoBank for a revolving line of credit
17  in the amount of $2,000,000; (2) on or about April 27, 2004, co-
18  defendant Mizrahi signed, on behalf of New Electronic, the initial
19  loan agreement with UCB for a revolving line of credit in the amount
20  of $10,000,000; and (3) on or about May 18, 2005, co-defendant
21  Mizrahi signed, on behalf of New Electronic, an additional loan
22  agreement with UCB for an additional revolving line of credit in the
23  amount of $12,000,000.

24    In connection with the above-referenced request for approval of
25  the revolving line of credit in the amount of $12,000,000 on behalf
26  of New Electronic, co-defendant Mizrahi and defendant GREENES, at co-
27  defendant Mizrahi's direction, submitted to UCB false and fraudulent
28  information.  For instance, on or about April 15, 2005, within the

Central District of California and elsewhere, co-defendant Mizrahi
and defendant GREENES, at co-defendant Mizrahi's direction, submitted
to UCB fraudulent financial statements for New Electronic, including,
a balance sheet dated as of December 31, 2004, showing $13,808,552.70
in accounts receivable ("New Electronic December 31, 2004 balance
sheet").  To cause the creation of the New Electronic December 31,
2004 balance sheet, co-defendant Mizrahi provided to his companies'
bookkeeper fraudulent documents, including fabricated bank statements
for an account in the name of New Electronic Inc. dba Electro Star
purporting to show bank deposits of payments on accounts receivable
received from customers.  The bookkeeper then used this and other
information provided by co-defendant Mizrahi to prepare various
financial documents, including the New Electronic December 31, 2004
balance sheet.  The New Electronic December 31, 2004 balance sheet,
as defendant GREENES well knew, was false in that it reflected a
grossly inflated fraudulent amount of accounts receivable due to New
Electronic, or at a minimum, GREENES was aware of a high probability
that the balance sheet reflected a grossly inflated fraudulent amount
of accounts receivable due to New Electronic, and deliberately
avoided learning the truth.  Specifically, the balance sheet included
an amount of accounts receivable due to New Electronic based on
customers that did not exist and customers that did not purchase the
products from New Electronic.  At least approximately 40% of the
amount of accounts receivable stated on the New Electronic December
31, 2004 balance sheet was fraudulent.  The New Electronic December
31, 2004 balance sheet was material to UCB's decision to fund the
$12,000,000 line of credit.

As a result of the above-described fraudulent scheme, UCB disbursed funds to New Electronic, including an advance of $950,000 into New Electronic's bank account on July 1, 2005.

In furtherance of the scheme to defraud, defendant GREENES, at co-defendant's Mizrahi's direction, took the following actions, among others:

- On May 12, 2004, defendant GREENES emailed a request to UCB to advance short-term funding for $665,400 for NEI purportedly to purchase 2,500 27" televisions and 3,000 19" televisions from Sharp Electronics in which the email stated to UCB that "[t]he product is basically presold to a few customers, SAMS CLUB/CARIBBEAN [sic] OCEAN/CASA LEY/CAREFOUR [sic]." With respect to these products and these customers, New Electronic did not use the funds advanced from UCB to purchase these products from Sharp Electronics to sell to Sam's Club or Casa Ley; and New Electronic did not list Caribbean Ocean or Carrefour as customers of New Electronic on accounts receivable documents submitted to UCB.

- On June 1, 2004, defendant GREENES faxed a request to UCB requesting $569,000 purportedly to purchase 3,000 Daewoo DVD-VCR combo, 2,000 Daewoo 4HD VCRs, and 2,000 Samsung DVD/VCR combo from Teamex Corp., USA in which the faxed request stated to UCB that the customer for the majority of these products was Wal-Mart. New Electronic did not use the funds to purchase these products from Teamex for sale to Wal-Mart.

- On June 16, 2004, defendant GREENES signed a document that authorized a commercial loan transaction request for NEI, by signing and submitting a request to UCB which UCB used to advance NEI $1,127,000 on its line of credit on June 17, 2004.

- On July 19, 2004, defendant GREENES signed a document that authorized a commercial loan transaction request, by signing and submitting to UCB a disbursement request in the amount of $726,000 which UCB used to advance NEI $726,000 on its line of credit on July 19, 2004.

- On June 30, 2005, defendant GREENES signed a document that authorized a commercial loan transaction request, by submitting a commercial loan transaction request in the amount of $950,000 which UCB used to approve an advance for $950,000 on June 30, 2005.

As a result of the above-described fraudulent scheme, the Victim Banks sustained the following approximate losses:

i.  UCB – $20,000,000 (as of October 31, 2005); and

ii.  TomatoBank – $183,000.